FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 22, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRYAN S.,[1] | No. 1:18-cv-03209-MKD |
|        Plaintiff, | |
| | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
|   vs. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[2] | |
|        Defendant. | ECF Nos. 14, 15 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

4.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

1     If the severity of the claimant's impairment does not meet or exceed the

2  severity of the enumerated impairments, the Commissioner must pause to assess

3  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

4  defined generally as the claimant's ability to perform physical and mental work

5  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

6  404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

7     At step four, the Commissioner considers whether, in view of the claimant's

8  RFC, the claimant is capable of performing work that he or she has performed in

9  the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is

10 capable of performing past relevant work, the Commissioner must find that the

11 claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of

12 performing such work, the analysis proceeds to step five.

13    At step five, the Commissioner considers whether, in view of the claimant's

14 RFC, the claimant is capable of performing other work in the national economy.

15 20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner

16 must also consider vocational factors such as the claimant's age, education, and

17 past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of

18 adjusting to other work, the Commissioner must find that the claimant is not

19 disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to

20

other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On November 10, 2016, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of November 10, 2016. Tr. 189-90. The application was denied initially, Tr. 121-27, and on reconsideration, Tr. 129-35. Plaintiff appeared before an administrative law judge (ALJ) on May 2, 2018. Tr. 43-82. On June 5, 2018, the ALJ denied Plaintiff's claim. Tr. 12-42.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through December 31, 2021, has not engaged in substantial gainful activity since November 10, 2016. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar spine degenerative disc disease, knee impairment (patella femoral syndrome), obstructive sleep apnea, headaches, affective related disorders (depression,

dysthymic disorder), anxiety related disorders, posttraumatic stress disorder (PTSD), cognitive disorder, obesity, asthma, shoulder impairment and left ankle impairment. *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 20-22. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can occasionally balance, stoop, kneel, and crouch, cannot climb or crawl, can frequently reach, and must avoid concentrated exposure to extreme cold, noise, vibration, and hazards. He can perform simple, routine tasks and follow short, simple instructions, can do work that needs little or no judgment, and can perform simple duties that can be learned on the job in a short period. [Plaintiff] requires a work environment with minimal supervisor contact. (Minimal contact does not preclude all contact, rather it means contact does not occur regularly. Minimal contact also does not preclude simple and superficial exchanges and it does not preclude being proximity to the supervisor). He can work in proximity to co-workers but not in a cooperative or team effort, requires a work environment that has no more than superficial interactions with co-workers, and requires a work environment that is predictable and with few work setting changes, i.e. a few routine and uninvolved tasks according to set procedures, sequence, or pace. [Plaintiff] cannot deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process. Incidental contact of a superficial nature with the general public is not precluded.

Tr. 22.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 34. At step five, the ALJ found that, considering Plaintiff's age,

ORDER - 7

education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as housekeeper, small products, assembler and marker. Tr. 35. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of November 10, 2016, though the date of the decision. Tr. 36.

On September 12, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 1-5, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims;

2. Whether the ALJ properly evaluated the medical opinion evidence;

3. Whether the ALJ properly evaluated the Veterans Affairs disability determination; and

4. Whether the ALJ conducted a proper step-five analysis.

ECF No. 14 at 3-4.

# DISCUSSION

## A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting his symptom claims. ECF No. 14 at 7-9. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v.*

*Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why they discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929 (c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that

Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 23. While Plaintiff listed all of the reasons the ALJ gave for rejecting Plaintiff's statements, Plaintiff only articulated an argument regarding the ALJ's finding that Plaintiff made inconsistent statements. ECF No. 14 at 7-9, ECF No. 16 at 2-3. Plaintiff failed to challenge the other reasons the ALJ cited in finding that Plaintiff's statements regarding his symptoms were not entirely consistent with the evidence, thus, any challenges are waived, and the Court may decline to review them. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). However, upon review, the Court finds that the ALJ provided specific, clear, and convincing reasons, supported by substantial evidence, to support his finding. Tr. 23-28.

### 1. Inconsistent statements

The ALJ found Plaintiff made inconsistent statements regarding his injuries and limitations. Tr. 23-24. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation,"

such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

Here, the ALJ identified numerous instances were Plaintiff had made inconsistent statements. Tr. 24-25. The ALJ found Plaintiff consistently reported that he was injured in a motor vehicle accident but made multiple inconsistent reports about how the accident occurred, whether he lost consciousness during the accident, and the extent of his injuries resulting from the accident. Tr. 24-25 (citing Tr. 893 (reporting an accident that resulted in memory problems but unsure if had a traumatic brain injury (TBI) or if he lost consciousness); Tr. 894 (reporting accident where vehicle backed into a building accidentally, causing blindness for three weeks and visual difficulties); Tr. 601 (reporting accident in which driver through a building, resulting in a TBI and other injuries); Tr. 376 (reporting vehicle ran through building's wall, potentially causing loss of consciousness, some amnesia, and three days of blindness); Tr. 597 (reporting head shattered window in the accident); Tr. 606 (reporting accident caused broken clavicle, concussion, and fracture)).

Moreover, the ALJ observed that Plaintiff also inconsistently reported his daily activities, inconsistently described his hearing loss, tinnitus, impaired sleep, and psychiatric symptoms, and inconsistently described why his work ended. Tr. 25. For example, the ALJ noted that Plaintiff inconsistently reported that he only

ORDER - 12

left his home for appointments, while also reporting he regularly drove his wife to work and drove to his in-laws. *Id.* (citing Tr. 251, 258, 292). While Plaintiff alleges hearing loss and tinnitus beginning in 2010, the ALJ noted that he previously denied tinnitus on three occasions and did not report tinnitus until 2016, and he had a normal audiology test. Tr. 25 (citing Tr. 253, 494-95, 497). Plaintiff alleged severely impaired sleep, but as the ALJ noted, his records demonstrate medication improved his symptoms, though Plaintiff discontinued the medication because it either made him fatigued or lightheaded, and Plaintiff was not generally observed as fatigued or tired except when he had engaged in strenuous physical activity. Tr. 26 (citing Tr. 1268, 1444, 1449, 1519). Plaintiff reported not taking any psychiatric medication for "quite some time" and reported doing well until three months prior to November 2016. Tr. 25 (citing Tr. 524). Finally, the ALJ noted that Plaintiff inconsistently reported he stopped working either due to missing too much work, or because his employer gave him irregular shifts. Tr. 25 (citing Tr. 527, 613, 710).

Plaintiff contends the ALJ improperly relied on the identified inconsistencies in discrediting Plaintiff's symptom complaints. ECF No. 14 at 8. Plaintiff first contends the only inconsistency regarding the accident is whether Plaintiff reported losing consciousness, however, as articulated by the ALJ, Plaintiff's description of

how the accident occurred varied, as did his reports as to whether he lost consciousness, and how long he lost his vision after the accident.

Plaintiff next contends that the inconsistencies were minute in nature and the result of Plaintiff's memory loss and brain injury. ECF No. 14 at 9. However, the Court cannot remand based on Plaintiff's alternate explanations. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). Moreover, the Court notes Plaintiff offers no explanations for the inconsistent statements regarding whether Plaintiff's job ended due to him missing too much work due to appointments and his conditions, or due to him quitting because his employer had his "schedule all messed up," and for the inconsistent statements regarding when he began experiencing tinnitus and hearing loss. Finally, the Court notes there are multiple conflicting statements throughout the record regarding whether Plaintiff provides transportation to this family members, cares for his child, independently handles his daily activities and handles household chores. Tr. 527, 530-31, 589, 607-08. Plaintiff also reported caring for his wife when she was experiencing postpartum depression, and on another occasion when she was recovery from surgery and needed physical assistance. Tr. 527, 607.

While there may be alternative reasons that explain some of Plaintiff's inconsistent statements, on this record, the ALJ reasonably concluded that

ORDER - 14

Plaintiff's reports regarding the nature of his injuries, symptoms, and limitations varied and his reports were not entirely consistent with the evidence. *See Tonapetyan*, 242 F.3d at 1148 ("Even if we discount some of the ALJ's observations of [the claimant's] inconsistent statements and behavior, which might have innocent explanations as [the claimant] contends, we are still left with substantial evidence to support the ALJ's credibility determination."). Further, as the ALJ's interpretation of the evidence is reasonable, it will not be disturbed. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). This was a clear and convincing reason to find Plaintiff's symptom complaints not credible.

### 2. Objective evidence

The ALJ concluded that Plaintiff's reported symptoms and limitations were inconsistent with the objective evidence. Tr. 26-27. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680. However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

First, the ALJ found Plaintiff's reported physical limitations were not supported by minimal findings on examination and normal imaging. Tr. 26. In his opening brief, Plaintiff failed to present argument on this reason, thus, waiving any challenge. *See* ECF No. 14 at 7-9; *Carmickle*, 533 F.3d at 1161 n.2 (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). However, the Court conducted an independent review and determines the reason is supported by substantial evidence in the record.

Plaintiff's physical examinations were generally normal. Tr. 579-80, 644, 1114, 1122, 1265. Despite Plaintiff's complaints of pain and physical limitations, his imaging and test results were generally normal. Tr. 379 (normal imaging of cervical spine and lumbar spine); Tr. 401 (normal imaging of shoulder); Tr. 402 (normal electromyography); Tr. 1523 (normal imaging of knees).

Second, the ALJ noted Plaintiff's reports of disabling pain, headaches and other symptoms were inconsistent with notes showing he was generally seen as in no to mild distress, with rare notes of moderate distress. Tr. 26 (citing, e.g., Tr. 514; Tr. 547 (no distress); Tr. 1267 (no distress); Tr. 1307 (mild to moderate distress); Tr. 1315 (mild to moderate distress)). While Plaintiff reports disabling migraines, he also reported never missing work due to his chronic migraines, Tr.

376, he has not seen a neurologist, and he has not had any visits to urgent care or the emergency department due to migraines. The ALJ reasoned the lack of consistently documented external signs of pain or discomfort is inconsistent with Plaintiff's allegation of disabling pain and constant symptoms. Tr. 26.

Third, the ALJ found Plaintiff's reported psychological limitations were inconsistent with minimal abnormal observations of his psychological functioning and his generally normal performance on exam. Tr. 27 (citing, e.g., Tr. 365 (oriented, normal affect); Tr. 378 (intact long-term memory, recalled 2 of 3 items after delay, normal language and concentration); Tr. 398 (irritable, fair insight/judgment, normal thoughts and attention, reported memory disturbance); Tr. 528 (euthymic mood, intact memory, normal thoughts and concentration, fair insight/judgement); Tr. 590-91 (irritable mood, normal thoughts, attention, and insight, and missed some items on memory testing but gave a clear and sequential history narrative)). While Plaintiff had an abnormal mood and affect at several exams, his psychological examinations and observations of his psychological functioning were generally otherwise normal. Tr. 590-91, 1234, 1268, 1310, 1520, 1534. The lack of objective evidence was a relevant consideration in the ALJ's ultimate assessment of Plaintiff's symptom reports.

*3. Activities of daily living*

The ALJ found Plaintiff's activities of daily living were inconsistent with his reported symptoms and limitations. Tr. 27. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Plaintiff failed to challenge this reason, thus, any challenge is waived. *See Carmickle.*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at, 1000. Despite Plaintiff's waiver, the Court conducted an independent review of the ALJ's decision and finds the ALJ's opinion is supported by substantial evidence in the record. First, the ALJ found that Plaintiff's allegation that he was disabled due to concentration and focus issues was inconsistent with his ability to drive. Tr. 27. The ALJ noted that Plaintiff reported that he drives his wife to work daily and drives his son to his

wife's parents' home. *Id.*, Tr. 54-55. The ALJ reasoned Plaintiff's driving was inconsistent with his reported severe limitations in concentration and focus. Tr. 27-28. The ALJ also found Plaintiff's reports that he cared for household chores, his wife and son, and went on outings to public events and Disneyland were inconsistent with his reported psychiatric symptoms and limitations. Tr. 28 (citing Tr. 527, 607, 611). Moreover, the ALJ noted that Plaintiff's ability to attend public events, including hockey games and rodeos, is inconsistent with his asserted psychiatric symptoms. Tr. 28, 57. While Plaintiff reported difficulties with some of these activities, the reported activities are inconsistent with his reported debilitating migraines, pain and psychological symptoms. This finding is supported by substantial evidence in the record.

In sum, the ALJ gave clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's symptoms complaints.

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of Roseann Umana, Ph.D., M. Liddell, M.D., and Kenneth Sewell, M.D. ECF No. 14 at 10-12, ECF No. 16 at 3-4.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."
*Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).
Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31). The opinion of a nonexamining physician may serve as substantial evidence if

it is supported by other independent evidence in the record.  *Andrews v. Shalala*,

53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Dr. Umana

Dr. Umana, Plaintiff's treating provider, issued a letter to Veteran's Affairs.

Tr. 475-76.  She diagnosed Plaintiff with PTSD and history of TBI, and opined that

Plaintiff has markedly limited concentration, and his concentration/memory

limitations would significantly limit his ability to remember and carry out

instructions.  Tr. 475-76.  She further opined Plaintiff's social functioning beyond

the superficial level is "quite limited," as is his ability to handle ordinary work

pressure, including the ability to handle a normal work schedule.  *Id.*  The ALJ

gave Dr. Umana's opinion slight weight.  Tr. 30-31.  As Dr. Umana's opinion was

contradicted, the ALJ was required to give specific and legitimate reasons,

supported by substantial evidence, to reject the opinion.  *See Bayliss*, 427 F.3d at

1216 (citing *Lester*, 81 F.3d at 830-31).

Plaintiff argues that the ALJ erred in affording more weight to the opinion of

Dr. Liddell, a consultative examiner, than the weight assigned to Dr. Umana's

opinion.  ECF No. 14 at 11-23; ECF No. 16 at 3-4.  Dr. Liddell performed a

psychological consultative examination.  Tr. 589-91.  Based on the examination,

Dr. Liddell opined that Plaintiff does not have any obvious limitations.  Tr. 591.

The ALJ gave Dr. Liddell's opinion substantial weight, finding it was consistent

with Dr. Liddell's observations and the record as a whole. Tr. 29. However, the ALJ found Plaintiff has some limitations, as indicated in the RFC. *Id.*

The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1041. Other cases have upheld the rejection of an examining or treating physician based in part on the testimony of a nonexamining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the nonexamining doctor's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion)); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

The ALJ reasoned Dr. Liddell's opinion is consistent with Dr. Liddell's observations. Tr. 29. However, the ALJ found that while Plaintiff did not have any obvious limitations at the consultative examination, the record as a whole

demonstrated Plaintiff had some psychiatric symptoms and some difficulties on mental status examinations. *Id.* As such, while the ALJ gave Dr. Liddell's opinion substantial weight, he found Plaintiff had a more restricted RFC than Dr. Liddell's finding of no restrictions. *Id.*

Plaintiff argues Dr. Umana's opinion should have been given more weight than Dr. Liddell's, as Dr. Umana is a treating provider. ECF No. 16 at 3-4. Plaintiff contends it is "unclear" why the ALJ gave more weight to Dr. Liddell over Dr. Umana. *Id.* However, the ALJ gave reasons for the weight afforded to Dr. Liddell's opinion, as discussed *supra*, and the ALJ gave multiple reasons for rejecting Dr. Umana's opinion.

First, the ALJ rejected Dr. Umana's opinions, finding that the letter simply restated Plaintiff's subjective history, which is inconsistent with the medical evidence of record. Tr. 30. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149; *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Furthermore, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).

Here, the ALJ noted that Dr. Umana listed a history of traumatic brain injury, which the ALJ noted was not medically established. Tr. 30. The ALJ reasoned Dr. Umana's finding is based on Plaintiff's subjective evidence as there is not objective evidence of a traumatic brain injury. *Id.* Plaintiff argues he was diagnosed with a traumatic brain injury, however the cited records indicate Plaintiff has a "history of" a head or traumatic brain injury, which appear to be based on Plaintiff's self-report. Tr. 376, 475. A February 2015 record states Plaintiff had a prior diagnosis of traumatic brain injury, and as such no screening was done for a brain injury. Tr. 1055. There are other references to records from 2010 that contain a diagnosis of mild traumatic brain injury, Tr. 1162, however, the record does not contain any of the 2010 records related to the diagnosis of a traumatic brain injury. Further, the records also indicate a traumatic brain injury was actually ruled out in 2011, and Plaintiff previously reported he did not sustain a brain injury. Tr. 1164.

Next, the ALJ observed that Dr. Umana's opinion regarding Plaintiff's memory and concentration is inconsistent with the objective evidence, including the records that indicate he has presented with normal memory. Tr. 30. On multiple occasions, Plaintiff was observed as having a normal memory, with good immediate and long-term recall. *Id.* (citing Tr. 525, 529, 59, 79). While Plaintiff had some abnormalities in his memory testing, such as some difficulty at the

consultative examination, he had good attention and concentration, and was able to give a clear history narrative.  Tr. 30 (citing Tr. 590-91).  Similarly, the ALJ found Dr. Umana's opinion that Plaintiff's social functioning is limited, and that Plaintiff would not be able to maintain a normal work week, lacked objective support.  Tr. 30-31.  Dr. Umana did not cite any evidence to support the assertion that Plaintiff has social limitations.  The records demonstrate Plaintiff has engaged in social activities with his family and community.  Tr. 54-55, 527, 607, 611.  This was a specific and legitimate reason to reject Dr. Umana's opinion.

Third, the ALJ rejected Dr. Umana's opinions as being based on Plaintiff's self report.  Tr. 30-31.  A physician's opinion may be rejected if it is too heavily based on a claimant's properly discounted complaints.  *Tonapetyan*, 242 F.3d at 1149.  Given the lack of cited objective evidence and references to Plaintiff's reports, the ALJ reasoned the opinion was based on Plaintiff's self-report.  Tr. 30.  Dr. Umana's letter contains several references to Plaintiff's self-report and no citation to any medical evidence.  Tr. 475-76.  Plaintiff argues that Dr. Umana's opinion should not have been rejected because based on Plaintiff's self-report, as there was no finding of malingering.  ECF No. 14 at 11.  However, as addressed above, the ALJ properly discounted Plaintiff's statements.  This was a specific and legitimate reason to reject Dr. Umana's opinion.

Fourth, the ALJ found Dr. Umana's opinion was inconsistent with Plaintiff's daily activities. Tr. 31. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). Plaintiff does not challenge this reason, thus, any challenges are waived, and the Court may decline to review them. *See Carmickle,* 533 F.3d at 1161 n.2. However, upon review, the Court finds that this reason is supported by the record. Specifically, the ALJ noted Plaintiff's ability to drive inconsistent with Dr. Umana's opinion that Plaintiff can only concentrate for a few minutes. Tr. 31, 476. Plaintiff's other activities are also inconsistent with Dr. Umana's opinion; while she felt he has significant social limitations, Plaintiff spends time with his wife, child, his wife's parents, and took trips to Disney, a hockey game, a bull riding show and went fishing. Tr. 54-55, 57, 1519. While Dr. Umana opined Plaintiff has marked limitations in concentration, Plaintiff is able to drive daily and care for his child, household chores, and his wife when needed. Tr. 54-55, 527, 607. Dr. Umana opined Plaintiff could not sustain a normal work schedule, but Plaintiff has engaged in the activities discussed above on a daily basis, when his wife has been working or not feeling well. This was a specific and legitimate reason to reject Dr. Umana's opinion.

Finally, the ALJ found Dr. Umana's opinion was not well-supported or properly explained. Tr. 31. The Social Security regulations "give more weight to

opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202.

"[T]he ALJ need not accept the opinion of any physician, including a treating

physician, if that opinion is brief, conclusory and inadequately supported by

clinical findings." *Bray*, 554 at 1228. Plaintiff did not challenge this reason, thus,

it is waived. *See Carmickle,* 533 F.3d at 1161 n.2. However, upon review, the

Court finds that this was a specific and legitimate reason, supported by substantial

evidence, to support the ALJ's finding.

Dr. Umana noted Plaintiff has presented with a flattened, bland effect, and

has demonstrated limitations in concentration and memory. Tr. 475-76. However,

he also demonstrated the ability to answer questions and provide a history and

appears of average intelligence. *Id.* She stated his emotional functioning appears

"quite limited" but did not explain any evidence to support that statement. Tr. 476.

Dr. Umana noted Plaintiff arrived twice on the wrong day for appointments but

also noted Plaintiff's wife is in charge of tracking appointments. Tr. 475-76. Dr.

Umana otherwise only reiterated Plaintiff and his wife's reports. *Id.* While Dr.

Umana gave some details to support her opinion, there are no references to records

or any testing of Plaintiff's memory or concentration. *Id.* Though she states

Plaintiff has demonstrated limitations in memory and concentration, multiple

records demonstrate Plaintiff has had normal concentration and long-term memory,

though he had impaired short-term memory during some visits. Tr. 475, 525, 528,

590.  There is also no explanation for the social limitation, nor the opinion Plaintiff would be limited in normal work stressors.

The ALJ provided legally sufficient reasons for giving less weight to the opinion of Dr. Umana and for giving more weight to Dr. Liddell's opinion.

### 2. Dr. Sewell

Plaintiff's primary care physician, Dr. Sewell's, treatment notes state that Plaintiff's PTSD symptoms "are likely increasing his psychological/emotional distress related to his pain," his pain may cause increased anxiety, and without treatment for his PTSD "he is likely to experience ongoing psychological and physiological tension that will add 'fuel to the fire' of his pain problem."  Tr. 398. The ALJ did not address Dr. Sewell's notes.  While Plaintiff argues that the ALJ improperly rejected Dr. Sewell's notes by failing to include further limitations in the RFC, Plaintiff does not point to any specific limitation that was not included. ECF 14 at 19.

Treatment notes, in general, do not constitute medical opinions.  *See* 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").  The Ninth Circuit has found no error in ALJ decisions that do not weigh statements

ORDER - 28

within medical records when those records do not reflect physical or mental limitations or otherwise provide information about the ability to work. *See, e.g.*, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (recognizing that when a physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions.").

Dr. Sewell's statements do not provide any specific functional limitations nor any opinion regarding Plaintiff's ability to work. Dr. Sewell made vague statements that Plaintiff's PTSD symptoms are likely increasing his distress related to his pain, and he is likely to have ongoing tension that will add to his pain. Tr. 398. As Dr. Sewell's statements do not amount to an opinion, the ALJ was not required to give reasons for rejecting the statements. Plaintiff is not entitled to remand on these grounds.

**C. Veterans Affairs Determination**

Plaintiff contends the ALJ gave insufficient weight to the Veteran Affair's (VA) determination of disability. ECF No. 14 at 12-13. He has a combined

disability rating of 100 percent.  Tr. 1219.[3]  The ALJ must ordinarily give great

weight to a Veterans Affairs determination of disability "because of the marked

similarities between" the VA and Social Security Administration as "federal

disability programs."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir.

2002).[4]  However, "[b]ecause the VA and SSA criteria for determining disability

_____

[3] Plaintiff received a disability rating of 40 percent for his scotoma/low vision with

visual field contraction, 0 percent for his right knee patellofemoral pain syndrome

flexion, 20 percent for his left shoulder strain, 30 percent for his

migraines/headaches, 100 percent for his PTSD, 10 percent for his left ankle

sprain, 20 percent for his right shoulder adhesive capsulitis/residuals of a closed

fracture, and 10 percent for right patellofemoral pain syndrome extension.  Tr.

1213-18.

[4] For claims filed on or after March 27, 2017, decisions made by other

governmental agencies are "neither inherently valuable or persuasive," and ALJs

"will not provide any analysis about how we considered such evidence."  20 C.F.R.

§ 404.1520b(c) (2017).  "This amended regulation will overrule *McCartey*'s

requirement that 'an ALJ must ordinarily give great weight to a VA determination

of disability' or provide 'persuasive, specific, valid reasons for [giving less weight]

that are supported by the record."  *Underhill v. Berryhill*, 685 F. App'x 522, 524

ORDER - 30

are not identical, [] the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id*. Here, the ALJ gave little weight to the VA's determination that Plaintiff has service-connected disabilities the agency considers 100 percent disabling. Tr. 31-32.

First, the ALJ gave more weight to the objective findings in the VA treatment records and the opinions within the records. Tr. 31. Inconsistency with the medical evidence provides a "persuasive, specific, valid reason" for rejecting a VA disability rating. *Berry v. Astrue*, 622 F.3d 1228, 1236 (9th Cir. 2010); *see also Phillips v. Berryhill*, No. 3:16-cv-00226-LRH-WGC, 2017 WL 3130418, at *10 (D. Nev. July 24, 2017) (ALJ properly rejected VA's mental impairment 70 percent disability rating where claimant's longitudinal record showed normal mental status examinations).

The ALJ referenced his earlier analysis of the objective evidence and opinions in support of his rejection of the VA determination. Tr. 31. His analysis included the State agency psychological consultants' opinions that Plaintiff can

---

n.1 (9th Cir. 2017) (J. Ikuta, dissenting) (internal citations omitted). Because this case was filed before March 27, 2017, the Court applies *McCartey* to the ALJ's analysis.

ORDER - 31

perform simple, routine tasks, Tr. 29, the medical consultants' opinions that

Plaintiff can perform medium work, Tr. 28, and Dr. Liddell's opinion that Plaintiff

has no obvious limitations, *Id.* The ALJ analyzed medical records, which included

normal imaging, normal physical examinations and observations that Plaintiff was

generally in no acute distress, Tr. 26, as well as generally normal mental status

examinations and observations of normal psychological functioning, Tr. 27. While

the objective evidence demonstrates some abnormalities, the ALJ's finding that the

evidence is inconsistent with the VA rating is reasonable. For example, it is

reasonable to conclude that the generally normal psychological examinations are

inconsistent with the rating of 100 percent disability due to PTSD. This was a

persuasive, specific, and valid reason to reject the VA rating.

Second, the ALJ reasoned Plaintiff's reported functional limitations are

inconsistent with the record. Tr. 31. As discussed *supra*, the ALJ properly

rejected Plaintiff's statements. The VA rated Plaintiff's vision impairment at 40

percent, and noted the impairment is due to his reported traumatic brain injury. Tr.

1213-14. Yet, the record lacks objective evidence of a traumatic brain injury. Tr.

30, 1164. The 100 percent rating for PTSD was based in part on Plaintiff's

reported symptoms and limitations, including his reported memory impairment.

Tr. 1217. However, Plaintiff's memory was normal at most examinations. Tr.

528, 536, 556. While this reason alone would not be sufficient for rejecting the

VA rating, in combination with the first reason given by the ALJ, the rejection of the VA rating was proper. Plaintiff is not entitled to remand on these grounds.

**D. Step Five Analysis**

Plaintiff argues the ALJ erred at step five by failing to account for Plaintiff's limitations in the RFC. ECF No. 14 at 13-20. At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work, and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran*, 700 F.3d at 389. In assessing whether there is work available, the ALJ must rely on complete hypotheticals posed to a vocational expert. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101.

The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all the limitations and restrictions of the claimant. *Bray*, 554 F.3d at 1228. As discussed above, the ALJ's RFC need only include those limitations found credible and supported by substantial evidence. *Bayliss*,

427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record."). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id*. However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). Therefore, the ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel if they are not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). A claimant fails to establish that a step five determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Plaintiff argues the ALJ erred at step five because the RFC does not account for Plaintiff's reported memory and concentration limitations or need for breaks and absences. ECF No. 14 at 14, 19. First, Plaintiff argues the treating source opinions support his argument. *Id*. However, as addressed *supra*, Plaintiff's statements were properly discounted, as was Dr. Umana's opinion, and Dr.

Sewell's statements do not amount to an opinion.  Second, Plaintiff references statements made by third parties, including statements regarding Plaintiff's concentration and memory.  *Id.*  However, Plaintiff offered no arguments that the ALJ improperly rejected the lay witness statements.  Third, Plaintiff discussed the opinions of the reviewing medical consultants, Dr. Kester and Dr. Robinson, but again failed to argue the opinions were improperly rejected as he argues only that the ALJ failed to give "proper weight to the treating providers." *Id.* at 15-19.  Plaintiff also cited to the VA rating as evidence to support his argument, but the VA rating was properly rejected. *See id.* at 17-18.

Lastly, Plaintiff cites to several medical records to support his argument, such as a visit with Ms. Brimmer in which Plaintiff did not recall information from his last session and was noted as "quite tired."  Tr. 1534.  However, at that visit, Plaintiff was alert, oriented, cooperative, less anxious, and had good eye contact, linear and logical thoughts, a relatively euthymic mood, and an appropriate affect.  Tr. 1533.  The cited records do not demonstrate that Plaintiff is clearly more limited than the limitations accounted for in the RFC.

The ALJ has the discretion to evaluate and weigh the evidence and the Plaintiff's alternative interpretation of the evidence does not undermine the ALJ's analysis.  Plaintiff has not demonstrated that any opinions or other evidence set

forth limitations that the ALJ failed to include in the RFC and failed to properly reject. As such, Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED January 22, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE